FILED
2019 Dec-09 PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTER DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | |
|---|---|
| **MICHAEL E. VAUGHAN,** | } |
| | } |
| **Plaintiff,** | } |
| | } Case No.: 4:18-CV-01500-RDP |
| v. | } |
| | } |
| **NANCY A. BERRYHILL,** | } |
| **Acting Commissioner of Social Security,** | } |
| | } |
| **Defendant.** | |

**MEMORANDUM OF DECISION**

Plaintiff Michael E. Vaughan ("Plaintiff" or "Vaughan") brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") to deny his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§405(g) and 1383(c). After careful review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed applications for DIB and SSI on April 10, 2015, and March 15, 2016, respectively. (Tr. 49, 136, 249). Plaintiff alleged disability beginning April 10, 2012.[1] (*Id.*). Plaintiff's claim was initially denied on August 12, 2015. (Tr. 70). After his application was denied, Plaintiff filed a request for a hearing. (Tr. 75-76). On July 19, 2017, Plaintiff received a hearing before Administrative Law Judge ("ALJ") Mary E. Helmer. (Tr. 29-45). On November 13, 2017, the ALJ determined that Plaintiff was not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Act. (Tr. 24).

---

[1] On July 19, 2017 Plaintiff amended the original date of disability to March 4, 2015. (Tr. 32).

1

On July 16, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1–3). Following that denial, the final decision of the Commissioner became a proper subject of this court's appellate review. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (finding the ALJ decision final for purposes of judicial review when the Appeals Council denied review).

Plaintiff was forty-one years old both at the time of his hearing before the ALJ, and when the ALJ's decision was rendered. (Tr. 23, 136, 277). Plaintiff competed his GED, two years of college, and CDL school. (Tr. 175, 320). He has previously worked in the banking, lawn care, and distribution industries. (*Id.*). These jobs included work as a teller, landscaper, and material handler in a shipping and receiving facility. (Tr. 32, 42, 160). In the spring of 2012, Plaintiff was "let go" from his employment at a shipping and receiving facility for failing to "make production." (Tr. 32). He has not regained employment since his dismissal in 2012. (Tr. 37). He alleges he has not been able to engage in substantial gainful employment since March 4, 2015, when he "became unable to work due to major depressive disorder with psychotic features, post-traumatic stress disorder (PTSD), panic disorder with agoraphobia, mood disorder, personality disorder, anxiety disorder, and cervical and thoracic degenerative disc disease." (Doc. #13 at 4).

In October 2012, Plaintiff began seeking treatment for back pain at Med-Assist Doctors Group in Albertville, Alabama. (Tr. 283-84.). He sought pain management for thoracic and lumbar back pain. (*Id.*). At the time, Plaintiff was taking 180 pills of Lortab 10 each month. (*Id.*). However, Plaintiff had never had an MRI of his spine. (*Id.*). As a result, his treating physician, Dr. Larry Johnston, M.D., informed him that he would not prescribe Plaintiff a pain management regiment without further imaging of his spine. (*Id.*).

In February 2015, Plaintiff sought treatment at Marshall Medical Center for injuries incurred as a result of a fall. (Tr. 290). He complained of mild pain to his mid-back and right hand. (*Id.*). The treating physician, Dr. Lisa Driskill, M.D., noted that Plaintiff had a painless range of motion with no tenderness in his neck and a normal range of motion with mild tenderness over the mid-thoracic spine. (Tr. 291). AP, lateral, and swimmers views of the thoracic spine revealed no evidence of fractures, dislocation, or soft tissue abnormality, and Plaintiff's thoracic vertebral disc bodies and disc spaces were normal. (*Id.*) Plaintiff was prescribed pain medication and a muscle relaxant and was subsequently discharged. (Tr. 293).

In March and April 2015, Plaintiff sought treatment numerous times at Care Plus Family Medical, LLC in Albertville, Alabama. (Tr. 303-05). He complained of neck and upper back pain. (Tr. 305). Plaintiff was prescribed pain medication and a muscle relaxant. (Tr. 306). Plaintiff subsequently sought referral to an orthopedic specialist. (Tr. 303).

In April 2015, Plaintiff was treated at the Orthopaedic Center, P.C. by Dr. Vandana Maladkar, M.D., for neck and back pain. (Tr. 311). After examination, Dr. Maladkar diagnosed Plaintiff with neck pain with bilateral arm pain and thoracic pain radiating into his chest wall. (Tr. 312). Subsequent test results and MRI imaging revealed that he did have "some straightening of the cervical spine and minimal degenerative changes noted with mild disc desiccation." (Tr. 310). Further, Dr. Maladkar noted that there was "some mild osteophytes and facet hypertrophy consistent with arthritis." (*Id.*). Dr. Maladkar discussed treatment options with Plaintiff including "anti-inflammatory, physical therapy and epidurals." (*Id.*). Plaintiff stated that he would think about his treatment options and that he would like something for pain in the meantime; however, Dr. Maladkar responded that he does not prescribe pain management, but he could refer Plaintiff to a pain clinic if pain was an issue. (Tr. 310).

In July 2015, Plaintiff underwent a psychological evaluation, which was performed by Dr. Mary Arnold, Psy.D. (Tr. 318-19). Plaintiff told Dr. Arnold that he started a pain management methadone program on April 20, 2015 which requires a daily commute to Huntsville, Alabama. (*Id.*). Dr. Arnold noted that Plaintiff had a lengthy history of substance abuse including use of Demerol, oxycodone, oxytocin, dilaudid, heroin, and methamphetamine. (Tr. 320). Dr. Arnold also noted Plaintiff's visits to Dr. Lachman, a psychiatrist; however, no admission to a psychiatric unit had been reported. (*Id.*). Further, Dr. Arnold also noted that he displayed "no overt indicator of pain or impairment" and that he was "passively compliant and his demeanor [was] mellow." (*Id.*). After several cognition, information, thought processing, abstract reasoning, and judgment tests, Dr. Arnold concluded that Plaintiff's FSIQ was "estimated to be [in the] low average range." (Tr. 321).

As of June 19, 2017, Plaintiff was still undergoing treatment at Huntsville Metro Treatment Center for a "chemical dependency." (Tr. 336). This treatment requires him to receive a 220-milligram dose of methadone per day and serves to "eliminate [Plaintiff's] illicit narcotics cravings, prevents the onset of any withdrawal illness, and serves to establish a blockade effect against other narcotic use." (*Id.*). As part of the program, Plaintiff meets with a counselor once a month, at a minimum, and is subjected to random mandatory drug screening. (*Id.*).

On March 3, 2015, Plaintiff began being treated by Dr. Elizabeth Lachman, M.D., a psychiatrist. (Tr. 326). From March 3, 2015 to July 21, 2017, Plaintiff was evaluated eighteen times by Dr. Lachman. (Tr. 364-65). Dr. Lachman concluded that he had "a history of severe and worsening mental symptoms of serious mental illness as defined by DSM V, a further history of polysubstance abuse and is [*sic*] the case of many with a history of Bipolar I Disorder, and yet a further history of chronic, severe, declining occupational, social and personal functioning . . . ."

(Tr. 325, 328, 364). Dr. Lachman's official diagnoses included "Major Depressive Disorder, Severe, Recurrent, With Psychotic Features . . . Post Traumatic Stress Disorder . . . Panic Disorder With Agoraphobia [and] Complicated Bereavement." (*Id.*). Dr. Lachman concluded:

> Mr. Michael Eric Vaughan's psychiatric symptoms led to a marked, severe, and sometimes extreme degree of impairment in all areas related to occupational functioning. Mr. Michael Eric Vaughan is unable to work an eight hour day or even a four hour day. He is unable to perform routine work. He is unable to work with colleagues appropriately and unable to take orders from supervisors. He is unable to follow even simple and certainly complex directions. He is unable to adapt to changes in the work routine or the work environment. He is unable to interact appropriately with the public.

(Tr. 327, 330, 365). Dr. Lachman determined that Plaintiff was "unsafe and not able to function in the occupational setting." (*Id.*). Initially, Dr. Lachman opined that Plaintiff was unable to work for approximately 12-24 months; however, she subsequently altered the duration to that "foreseeable future." (*Id.*).

In August 2015, a non-examining state medical consultant, Dr. Teresa Moran, M.D., determined that Plaintiff was able to remember locations and work-like procedures. (Tr. 63). Dr. Moran opined that Plaintiff was also able to remember very short and simple instructions; however, Dr. Moran determined that he was unable to remember those that are longer or more complex. (Tr. 63-64). Dr. Moran determined that Plaintiff was able to maintain activities within a schedule, interact with the general public, ask simple questions or request assistance, and maintain appropriate behavior in the workplace. (Tr. 64-65). However, Dr. Moran opined that Plaintiff had moderate limitations in these areas: being distracted by others; maintaining a routine without a supervisor; concentrating for extended periods of time; and responding to changes in the workplace. (*Id.*) Dr. Moran also noted that Plaintiff's psychiatric symptoms could cause him to miss 1 to 2 days of work per month. (Tr. 64).

5

## II. ALJ Decision

The Act uses a five-step sequential evaluation process to determine a claimant's disability. 20 C.F.R. §404.1520(a) and 416.920(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. §404.1520(b) and 416.920(b). Substantial gainful activity is work done for pay or profit that requires significant physical or mental activities. 20 C.F.R. §404.1572(a-b) and 416.972(a-b). If the claimant has employment earnings above a certain threshold, the ability to engage in substantial gainful activity is generally presumed. 20 C.F.R. §404.1574, 404.1575, 416.974, and 416.975. If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability, regardless of a medical condition or age, education, and work experience. 20 C.F.R. §414.1520(b) and 416.920(b).

Second the ALJ must determine whether the claimant has a medically-determinable impairment that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §404.1420(c) and 416.920(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant's impairment meets or functionally equals an impairment listed in 20 C.F.R. §404, Subpart P, Appendix 1. If the criteria for impairment is met or functionally equal, the claimant is disabled. 20 C.F.R. §404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the impairment is not met or is not functionally equivalent, the ALJ will assess the claimant's residual functional capacity ("RFC") to perform, given their impairment, in a work setting. 20 C.F.R. §§404.15245(a)(1) and 416.920(a)(1). The RFC is based on medical and other evidence in the record. 20 C.F.R. §§404.1520(a)(4)(iv) and 416.920(a)(4)(iv). The ALJ makes an assessment about a claimant's RFC using a two-step process that determines: (1) whether there is an underlying medically-determinable impairment that could reasonably be expected to produce

the claimant's pain; and (2) the extent to which the claimant's symptoms would limit claimant's functioning. 20 C.F.R. §§404.1545(e) and 416.920(e). To determine the limiting effect of the claimant's impairment, the ALJ must consider the credibility of the claimant's statements about their pain the context of the record. 20 C.F.R. §§404.1529(c)(3) and 416.920(c)(3).

Once the ALJ has determined Plaintiff's RFC, the ALJ will consider in step 4 whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§414.1520(f) and 416.920(f). If the claimant is found capable of performing past relevant work, then the claimant is not disabled. *Id*. If the claimant is unable to perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. §§404.1520(a)(4)(v) and 416.920(a)(4)(v). In the fifth step, the ALJ will determine whether the claimant is able to perform any other work in the national economy that is commensurate with their RFC, age, education, and work experience. 20 C.F.R. §404.1520(g). Although the claimant must still prove disability, at this point the burden of production shifts from the claimant to the ALJ. The ALJ must provide evidence, in significant numbers, of jobs in the national economy that claimant can do, given their RFC, age, education, and work experience. 20 C.F.R. §§404.1520(g), 404.1560(c), 416.912(g), and 416.960(c).

Here, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2017. (Tr. 17). After reviewing the evidence and testimony, the ALJ determined that Plaintiff had the severe impairments of mood disorder, personality disorder, and anxiety disorder; and the non-severe impairment of mild degenerative changes of the cervical and thoracic spine. (Tr. 18). The ALJ found that Plaintiff's impairments, considered singly and in combination, failed to meet or medically equal a listed impairment. (Tr. 18).

Additionally, the ALJ found that despite his impairments, Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff could not climb ladders, ropes, or scaffolds, or work around unprotected heights or hazardous machinery; he could perform only unskilled work with simple work-related decisions; he had the ability to attend and concentrate for two-hour periods; he could perform work that was goal-oriented but he was precluded from production-paced work; he could have no direct interaction with the public; he could perform independent work that did not require teamwork or coordination with others; and he could have only occasional interaction with co-workers, although he could perform work around them. (Tr. 19). Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 23-24). Consequently, the ALJ found that Plaintiff was not disabled (Tr. 23-24), and not entitled to benefits under the five-step sequential evaluation process.

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff presents two arguments in favor of reversing the ALJ decision. First, he argues that the "ALJ failed to properly consider the opinion of Dr. Lachman, Plaintiff's treating psychiatrist." (Doc. #13 at 8). Second, he claims that the "ALJ failed to properly consider Plaintiff's psychiatric symptoms pursuant to the Eleventh Circuit's three-part pain standard." (Doc. #13 at 10). The court addresses each of these arguments below, in turn.

### IV. Standard of Review

Judicial review of disability claims under the Act is limited to two questions: (1) whether the record reveals substantial evidence to sustain the ALJ's decision; and (2) whether the correct legal standards were applied. 42 U.S.C. §405(g); *see Wilson v. Barnhart*, 284 F.3d 1219, 1221

(11th Cir. 2002). If the Commissioner's findings are supported by "substantial evidence," they are conclusive. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *See id.* (citing *Bloodsworth v. Heckler*, 703 F..2d 1233, 1239 (11th Cir. 1983)). If supported by substantial evidence, the Commissioner's factual findings *must* be affirmed, even if the record suggests otherwise. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (emphasis added). Nevertheless, while the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). Legal standards are reviewed de novo. *Moore*, 405 F.3d at 1211.

V.  **Analysis**

For the reasons explained below, the court finds that the decision of the Commissioner is due to be affirmed.

**A. Proper Weight was Accorded to the Opinion of Dr. Lachman.**

Plaintiff's initial argument is that the "ALJ failed to properly consider the opinion of Dr. Lachman, Plaintiff's treating psychiatrist." (Doc. #13 at 8). While the opinions of treating physicians are generally entitled to significant weight, an ALJ may discount a treating physician's opinion for good cause. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause may be found when (1) the treating physician's opinion is not bolstered by the evidence, (2) the evidence supports a contrary finding,

9

or (3) the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. *Id*.

Here, the ALJ discounted the assessment of Dr. Lachman, assigning minimal weight to Dr. Lachman's findings. (Tr. 22). The ALJ pointed to Dr. Lachman's failure to provide treatment records or make objective findings to support her opinions. (Tr. 22). At Plaintiff's July 19, 2017 hearing before the ALJ, Plaintiff's counsel affirmed that Dr. Lachman does not send medical records to support her findings. (Tr. 39). Instead, counsel stated that Dr. Lachman would only provide a summary of the treatment. (*Id.*).

The ALJ subsequently found that the overall medical evidence did not corroborate Dr. Lachman's findings of marked and extreme limitations. (*Id.*). Further, the ALJ noted that Plaintiff has not required inpatient health treatment. (*Id.*). The ALJ found that the overall medical evidence does not support more limitations in the claimant's ability to perform basic work activities, other than the restrictions enumerated in his residual functional capacity as determined by the ALJ. (Tr. 22). Moreover, Dr. Lachman's findings are not supported by Plaintiff's own testimony as Plaintiff testified that he is able to prepare small meals, take care of personal needs, take care of pets, and complete household chores without significant limitations. (Tr. 207-09).

For these reasons, Plaintiff's first ground for reversal is due to be denied.

### B. Substantial Evidence Supports the ALJ's Findings.

Plaintiff's second argument is that the "ALJ failed to properly consider Plaintiff's psychiatric symptoms pursuant to the Eleventh Circuit's three-part pain standard." (Doc. #13 at 10). It is axiomatic that Plaintiff bears the burden of establishing that he is disabled. *Green v. SSA.*, 223 Fed. Appx. 915, 923 (11th Cir. 2007). In the context of this case, Plaintiff must satisfy the pain standard test articulated by the Eleventh Circuit by showing "(1) evidence of an underlying

medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). If the ALJ determines that a claimant has a medically determinable impairment that could reasonably be expected to produce his pain, he must then evaluate the intensity and persistence of the claimant's symptoms to determine if they limit his capacity to work. 20 C.F.R. §404.1529(c)(1). The ALJ should consider all available evidence in making this determination. *Id*.

Here, the ALJ determined Plaintiff had several underlying medical conditions. (Tr. 17). ("The claimant has the following severe impairments: mood disorder, personality disorder, anxiety disorder . . . and non-severe impairments of mild degenerative changes of the cervical and thoracic spine.") (Tr. 17-18). Although, the record did not provide objective evidence confirming the severity of the alleged pain, the ALJ found Plaintiff's objective medical condition *could* be expected to cause symptoms as alleged. (Tr. 20). However, the ALJ did not find Plaintiff's claims regarding the intensity, persistence, and limiting effects of such symptoms to be entirely credible. (*Id*.).

"A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). If the ALJ discredits Plaintiff's subjective testimony, he must articulate "explicit and adequate reasons for doing so." *Id*. Plaintiff's medical records must be reviewed to determine if his complaints of pain are demonstrable within the record. 20 C.F.R. 404.1529(c)(1). There are several circumstances under which an ALJ may conclude that complaints of pain are not credible. For example, claims of long-term pain may be discredited by evidence that the "pain had not require[d]

routine or consistent treatment." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see also Ogranaja v. Comm'r of Soc. Sec. Admin.*, 186 Fed. Appx. 848, 851 (11th Cir. 2006) (gaps in treatment history may be used as evidence to discredit claims of disabling pain). The Eleventh Circuit has also held that "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)). The ALJ may also consider a claimant's daily activities as a factor in determining the credibility of pain claims. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

Plaintiff argues that the ALJ failed to consider substantial evidence of debilitating psychiatric symptoms as purportedly substantiated by Dr. Lachman. (Doc. #13 at 10-12). Dr. Lachman first began treating Plaintiff in March 2015. (Tr. 365). Over the next several months, Dr. Lachman evaluated Plaintiff an additional seventeen times. (*Id.*). After evaluating Plaintiff, Dr. Lachman concluded that Plaintiff had "a history of severe and worsening mental symptoms of serious mental illness as defined by DSM V, a further history of polysubstance abuse and is the case of many with a history of Bipolar I Disorder, and yet a further history of chronic, severe, declining occupational, social and personal functioning . . . ." (Tr. 325, 328, 364). Her diagnoses included "Major Depressive Disorder, Severe, Recurrent, With Psychotic Features . . . Post Traumatic Stress Disorder . . . Panic Disorder With Agoraphobia . . . [and] Complicated Bereavement (*Id.*).

Dr. Lachman determined Plaintiff suffers from the following: "severe and worsening mood disruption, anxiety, with panic episodes, as well as poor impulse control, severe depressive symptoms and severe mood swings with [Plaintiff] mostly anxious, depressed, despairing, despondent, with feelings of anhedonia, guilt, helplessness, and hopelessness." (Tr. 326, 329). She

further concluded that Plaintiff suffers from chronic pain which is worsened by his mental symptoms. (Tr. 327, 330, 365). Dr. Lachman opined:

> Mr. Michael Eric Vaughan's psychiatric symptoms led to a marked, severe, and sometimes extreme degree of impairment in all areas related to occupational functioning. Mr. Michael Eric Vaughan is unable to work an eight hour day or even a four hour day. He is unable to perform routine work. He is unable to work with colleagues appropriately and unable to take orders from supervisors. He is unable to follow even simple and certainly complex directions. He is unable to adapt to changes in the work routine or the work environment. He is unable to interact appropriately with the public.

(Tr. 327, 330, 365). Dr. Lachman, thus, determined that Plaintiff was "unsafe and not able to function in the occupational setting." (*Id.*). Initially, Dr. Lachman opined that Plaintiff was unable to work for approximately 12-24 months; however, Dr. Lachman subsequently altered the duration to the "foreseeable future." (*Id.*).

The ALJ assigned minimal weight to Dr. Lachman's findings. Dr. Lachman did not provide treatment records or objective findings to support her opinions. (Tr. 22). And, the ALJ subsequently found that the overall medical evidence did not corroborate Dr. Lachman's assertions of marked and extreme limitations. (*Id.*). For the same reasons noted above, the ALJ's assignment of minimal weight to Dr. Lachman's findings was proper.

The ALJ also considered the opinions of Drs. Arnold and Moran, state agency medical consultants. (Tr. 22). The consultants are considered experts in issues surrounding Social Security applicants, and the opinions of the consultants, if supported by the record, can be given great weight by the ALJ. See 20 C.F.R. §§404.1512(b)(8), 404.1527(e)(2)(i), (ii); Social Security Ruling (SSR) 96-6p, 1996 WL 374180 (S.S.A.); *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam).

In her report, Dr. Arnold noted that Plaintiff had a lengthy history of substance abuse. (Tr. 320). Dr. Arnold also noted Plaintiff's visits to Dr. Lachman; however, no admission to a

psychiatric unit had been reported. (*Id.*). Further, Dr. Arnold also noted that Plaintiff displayed "no overt indicator of pain or impairment" and that he was "passively compliant and his demeanor [was] mellow." (*Id.*). Dr. Arnold determined that Plaintiff was oriented in all spheres, could repeat forward span of 5 digits and 3 digits backwards, name the months of the year in sequence, mentally calculate quarters, count 20 to 1 and serial 7s, and recall 2 out of 3 objects after 5 minutes. (Tr. 321). After several cognition, information, thought processing, abstract reasoning, and judgment tests, Dr. Arnold concluded that Plaintiff's FSIQ was "estimated to be [in the] low average range." (*Id.*). The ALJ assigned great weight to Dr. Arnold's medical source opinion, as Dr. Arnold had an opportunity to examine the claimant and review a portion of the record. (Tr. 22). The ALJ found that Dr. Arnold's findings were consistent with the overall medical evidence in the record. (*Id.*).

Dr. Moran opined that Plaintiff was able to remember very short and simple instructions; however, Dr. Moran determined that he was not able to remember those that are longer or more complex. (Tr. 63-4). Dr. Moran further determined that Plaintiff was able to maintain activities within a schedule, interact with the general public, ask simple questions or request assistance, and maintain appropriate behavior in the workplace, (Tr. 64-5); however, Dr. Moran opined that Plaintiff had moderate limitations in being distracted by others, maintaining a routine without a supervisor, concentrating for extended periods of time, and responding to changes in the workplace. (*Id.*). Dr. Moran also noted that Plaintiff's psychiatric symptoms could cause him to miss 1 to 2 days of work per month. (Tr. 64). The ALJ afforded partial weight to Dr. Moran's medical source opinions because her opinions were generally consistent with the evidence in the record. (Tr. 22). However, the ALJ noted that post-assessment evidence did support moderate restrictions of daily living. (*Id.*).

The medical consultants' conclusions are consistent with substantial evidence in the record, including Plaintiff's own testimony. Plaintiff testified that he is able to prepare small meals, take care of personal needs, take care of pets, and complete household chores without significant limitations. (Tr. 207-09). Plaintiff also maintains a good relationship with his wife, daughter, granddaughter, and parents. (*Id.*).

Taken together, the medical records from the two state agency medical consultants and Plaintiff's own testimony are substantial evidence which supports the ALJ's conclusion that Plaintiff is not disabled and can engage in light work. For this reason, Plaintiff's second ground for reversal is due to be denied.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. The court further finds that proper legal standards were applied in reaching the ALJ's determination. The Commissioner's final decision is due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this December 9, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE